IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

STEVEN MICHAAN and
METAGEN ENERGY, LLC                                                          PLAINTIFFS

V.                                                              CAUSE NO.: 1:10CV12-SA-JAD

WILLIAM BRINKLEY                                                               DEFENDANT

MEMORANDUM OPINION

Plaintiffs have filed a Motion for Partial Summary Judgment [32] on their fraud claims. After reviewing the pleadings, motion, responses, rules and authorities, the Court finds as follows:

*Factual and Procedural Background*

Steven Michaan and William Brinkley met in 2003 in a New York lawyer's office. Brinkley represented that he could produce the energy equivalent of a gallon of gasoline using a cheaper alternate energy source. Specifically, Brinkley contended that he could produce the equivalent of one gallon of gasoline (1GGE) using only 5.7 to 7 pounds of aluminum. At that first meeting, Brinkley produced 99.9% pure hydrogen with his process in the law office's basement sink. From May 2003 to January 2005, Michaan advanced $92,000 to Brinkley for development of his "Metagen Process."[1] Michaan also contributed $10,000 for testing of the process by the American Hydrogen Association. On January 26, 2005, Michaan and Brinkley signed a Letter of Intent in which Michaan was to provide $300,000 more in funding for Brinkley to construct and equip a research facility and intellectual property company. In March of 2006, Michaan formed Metagen Energy, LLC, which began providing the funding for the Brinkley Process. All totaled, Michaan and Metagen Energy

---

[1]The terms "Metagen Process" and "Brinkley Process" are used interchangeably throughout this opinion but both refer to the alternate energy process developed by Defendant William Brinkley.

provided $847,000 to Brinkley to develop his process. In April of 2008, Plaintiffs ceased funding and demanded a scientific review of Brinkley's methods. Brinkley agreed only to provide the physicist hired to conduct the experiments with a list of the "ingredients" necessary for the Brinkley Process. Dr. Robert Sohval determined that it was "scientifically impossible" to produce 1GGE from anything less than 18 pounds of aluminum.

Plaintiffs filed this suit charging that Defendant misrepresented his ability to produce an alternate energy as efficiently as Brinkley promised, and that Defendant concealed other testing results proving that the Brinkley Process could not produce 1GGE with 5.7 to 7 pounds of aluminum.

Plaintiffs filed a Motion for Partial Summary on their fraudulent misrepresentation, fraudulent concealment, fraudulent inducement, negligent misrepresentation, breach of fiduciary duty, unjust enrichment, and constructive trust claims.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(c) when the evidence reveals no genuine dispute regarding any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. 2548. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins.

Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." Id.

*Discussion and Analysis*

A. Fraudulent Misrepresentation

In order to maintain a cause of action for fraudulent misrepresentation, the plaintiff must prove the following elements by clear and convincing evidence: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) [the speaker's] intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) [the hearer's] reliance on its truth, (8) [the hearer's] right to rely thereon, and (9) [the hearer's] consequent and proximate injury. Levens v. Campbell. 733 So. 2d 753, 761-62 (Miss. 1999).

Brinkley admits to representing to Plaintiffs that the Metagen Process could produce 1GGE of hydrogen with 5.79 pounds of aluminum. Plaintiffs assert that this is clearly false as the only expert designated in this case, Robert Sohval, reported that such a claim was "scientifically impossible." However, Defendant counters Sohval's conclusion by noting that Sohval did not have a detailed description of the Brinkley Process, so the expert's knowledge of the process is "very remote." Sohval never observed the Process being operated and never observed the machinery created for the purpose of running the Process. Kenneth Debelak, a chemical engineer from

3

Vanderbilt University, observed the Brinkley Process and issued a report with findings different than Sohval's. Indeed, Debelak's results indicated that the Brinkley Process produced 1GGE of energy using eight pounds of aluminum. Thus, there are genuine issues of material fact as to the falsity of Defendant's statement to Plaintiffs. Summary judgment on this claim is inappropriate.

B. Fraudulent Concealment

To allege fraudulent concealment of a claim, a plaintiff must show: "(1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was performed on their part to discover it." Whitaker v. Limeco Corp., 32 So. 3d 429, 436 (Miss. 2010) (citations omitted). Mississippi law requires that the affirmative act of concealment for fraudulent concealment occur subsequent to the initial fraud. Id. at 436-37.

"In Mississippi, a claim of fraud by omission arises only where the defendant had a duty to disclose material facts purportedly omitted. This duty generally arises only where there is a fiduciary relationship between the parties." Taylor v. So. Farm Bureau Cas. Co., 954 So. 2d 1045, 1049 (Miss. Ct. App. 2007); Strong v. First Family Financial Services, Inc., 202 F. Supp. 2d 536, 540 (S.D. Miss. 2002). Indeed, "since silence, in the absence of a duty to speak, is not actionable, Plaintiff's claims for fraudulent concealment is dependent on the existence of a duty of disclosure, which would arise if a fiduciary relationship existed." Id. (citing Chiarella v. United States, 445 U.S. 222, 228, 100 S. Ct. 1108, 63 L. Ed. 2d 348 (1980) ("One who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so.")).

> "Fiduciary relationship" is a very broad term embracing both technical fiduciary relations and those informal relations which exist wherever one person trusts in or relies upon another. A fiduciary relationship may arise in a legal, moral, domestic, or personal context, where there appears "on the one side an overmastering influence or, on the other, weakness, dependence, or trust, justifiably reposed." Additionally,

4

> a confidential relationship, which imposes a duty similar to a fiduciary relationship, may arise when one party justifiably imposes special trust and confidence in another, so that the first party relaxes the care and vigilance that he would normally exercise in entering into a transaction with a stranger.

Langston v. Bigelow, 820 So. 2d 752, 756 (Miss. Ct. App. 2002) (citing Lowery, 592 So. 2d at 83 (citations omitted)).

A fiduciary relationship may arise on the basis of "contract, agency, or the reposing of trust and confidence." Lowery, 592 So. 2d at 83. Here, the Plaintiffs allege that a fiduciary relationship arose because Michaan "placed special trust and confidence" in Brinkley. Brinkley does not dispute that Brinkley was in a position of trust and confidence with respect to his relationship with Michaan and Metagen Energy. Brinkley admitted to having control over the Metagen Process and the technical information as to how the process works. Accordingly, Brinkley did owe a fiduciary duty to Plaintiffs with respect to the Brinkley Process.

Plaintiffs contend that Brinkley was obligated to produce the results of the American Hydrogen Association testing performed by Roy McAlister and his failure to do so is fraudulent concealment. Michaan and Brinkley acknowledge that Michaan expressly supplied $10,000 to Brinkley to have the testing performed by the American Hydrogen Association. There is some question as to whether Michaan received a summary of the results from McAlister or not. The Letter of Intent signed by both Brinkley and Michaan conditioned continued funding on "the results of the McAlister evaluation . . . ." Thus, Michaan had an interest in those findings, but the record is undeveloped as to whether he inquired about those results to Brinkley. Accordingly, there are questions of fact as to whether Plaintiffs considered the disclosure material and whether due diligence was exercised in discovering those findings. The Court finds sufficient genuine issues of

material fact as to Plaintiffs' fraudulent concealment claim to prohibit the grant of summary judgment as to that cause of action.

### C. Fraudulent Inducement

"Fraud in the inducement arises when a party to a contract makes a fraudulent misrepresentation . . . for the purposes of inducing the innocent party to enter a contract." Lacy v. Morrison, 906 So. 2d 126, 129 (Miss. Ct. App. 2004). To prove fraudulent inducement, a party must prove the following elements by clear and convincing evidence:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the matter reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; (9) his consequent and proximate injury.

Id. (quoting Great S. Nat'l Bank v. McCullough Envtl. Servs. Inc., 595 So. 2d 1282, 1289 (Miss. 1992)).

As noted above, the Court finds there is at least genuine issues of material fact as to the falsity and materiality of Brinkley's representations to Plaintiffs. Thus, this claim will also be heard at trial.

### D. Negligent Misrepresentation

The elements of negligent misrepresentation are: (1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the defendant failed to exercise that degree of diligence and expertise the public is entitled to expect of it; (4) that the plaintiff reasonably relied on the defendant's representations; and (5) that the plaintiff suffered damages as a direct and proximate result of his reasonable reliance. Skrmetta v. Bayview Yacht Club, Inc., 806 So. 2d 1120, 1124 (Miss. 2002).

As noted in the above analysis, there are questions of fact as to whether Brinkley made a misrepresentation to Michaan, and whether Michaan was reasonable in relying on those representations when there was a clause in the Letter of Intent conditioning continued funding on the results of the McAlister evaluation. Thus, summary judgment as to this claim is denied.

### E. Breach of Fiduciary Duty

Pursuant to the analysis above, and the lack of objection by the Defendant, Brinkley owed Plaintiffs a fiduciary duty. Whether that fiduciary duty entailed disclosure of reports known to Brinkley remains a fact determination to be made at trial.

### F. Unjust Enrichment and Constructive Trust

Under Mississippi law, unjust enrichment is not an independent theory of recovery. Coleman v. Conseco, Inc., 238 F. Supp. 2d 804, 813 (S.D. Miss. 2002), partially abrogated on other grounds Sweeney v. Sherwin Williams Co., 304 F. Supp. 2d 868 (S.D. Miss. 2004); see also Estate of Johnson v. Adkins, 513 So. 2d 922, 926 (Miss. 1987) (discussing the doctrine of unjust enrichment as a measure of damages as opposed to an independent theory of recovery). Furthermore, in order to impose a constructive trust under Mississippi law, a court must find abuse of a confidential relationship resulting in unjust enrichment. McNeil v. Hester, 753 So. 2d 1057, 1064 (Miss. 2000).

According to the Mississippi Supreme Court, "A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy." Union National Life Ins. Co. v. Crosby, 870 So. 2d 1175, 1179 n.1 (Miss. 2004) (quoting Saulsberry

v. Saulsberry, 78 So.2d 758 (Miss. 1955)).

Thus, in order to impose a constructive trust under Mississippi law, a court must find abuse of a confidential relationship resulting in unjust enrichment. See McNeil, 753 So. 2d at 1064; see also Russell v. Douglas, 138 So.2d 730 (Miss. 1962) (quoting Sinclair v. Purdy, 235 N.Y. 245, 139 N.E. 255, 258 (N.Y. 1923), "[i]t is . . . . unjust enrichment under cover of the relation of confidence, which puts the court in motion."); McCarthy v. Smith, 2006 U.S. Dist. LEXIS 47022, at *8 (S.D. Miss. June 30, 2006). While "[a]ny transaction may provide an appropriate setting for creating a constructive trust," Alvarez [v. Coleman, 642 So. 2d 361, 367 (Miss. 1994)], "[a] confidential relationship is a necessary element," Braddock Law Firm, PLLC v. Becnel, 949 So. 2d 38, 48 (Miss. App. 2006).

The confidential relationship between Brinkley and Plaintiffs has been established. However, as earlier addressed, Plaintiffs have failed to establish that no genuine issue of material fact exists as to Brinkley's alleged fraud in the development of their relationship.

Alternatively, Plaintiffs argue for recovery of $143,546.45 of Plaintiffs' funds used by Brinkley for personal expenditures. Brinkley admits that all funds received by him from Plaintiffs were to be used in furtherance of the Brinkley Process. Brinkley does not deny using $143,546.45 for unauthorized personal expenditures. Plaintiffs were not aware Brinkley was using their funds to pay his personal expenses. With the $143,546.45, Brinkley paid credit card bills, mortgages, and utilities on his residence. No genuine issue of material fact exists as to Brinkley's fraudulent use of Plaintiffs' funds for personal expenses. Accordingly, Brinkley has been unjustly enriched in the amount of $143,546.45, and those damages are awarded to the Plaintiffs.

To the extent that Plaintiffs seek compensation for the remainder of the $847,000 under an

unjust enrichment theory, there remain questions of fact as highlighted above regarding Defendant's allegedly fraudulent conduct.

*Conclusion*

As there are genuine issues of material fact on all counts requested by Plaintiffs' Motion for Partial Summary Judgment, that motion is DENIED. However, Plaintiffs' unjust enrichment claim for monies used for personal expenditures by Defendant without authorization from Plaintiffs is GRANTED. Plaintiffs are awarded $143,546.45.

SO ORDERED, this the 3rd day of May, 2011.

                                               **/s/ Sharion Aycock**
                                               **U.S. DISTRICT JUDGE**